Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| JAVIER I. MERCADO VÁZQUEZ<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO DE SAN GERMÁN<br><br>Recurrente | TA2026RA00263 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Apelativa del Servicio Público<br><br>Caso número:<br>SM-21-000061<br><br>Sobre:<br>Beneficios Marginales |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece la parte recurrente, Municipio de San Germán, mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* emitida y notificada el 26 de marzo de 2026, por la Comisión Apelativa del Servicio Público. Mediante esta, la agencia recurrida declaró No Ha Lugar la apelación presentada por el recurrido, Javier I. Mercado Vázquez, a los fines de revisar el cómputo realizado por la parte recurrente para la liquidación de sus licencias acumuladas.

Por los fundamentos que expondremos a continuación, se revoca la *Resolución* recurrida. En consecuencia, se devuelve el caso ante la consideración de la agencia recurrida, para la continuación de los procedimientos, de forma cónsona con lo dispuesto en esta *Sentencia*.

### I

El 1 de diciembre de 2021, Javier I. Mercado Vázquez (Mercado Vázquez o el recurrido) presentó una apelación ante la Comisión Apelativa del Servicio Público (CASP o agencia recurrida),

en la que impugnó el cómputo realizado por el Municipio de San Germán (Municipio o parte recurrente), para la liquidación de sus licencias acumuladas.[1] En síntesis, Mercado Vázquez sostuvo que el cheque de $10,076.00 expedido por el Municipio, correspondiente a la liquidación de sus licencias tras su separación del servicio como empleado municipal, no corresponde a la cantidad que realmente se le adeuda.

En particular, el recurrido arguyó que tenía un derecho adquirido sobre las licencias acumuladas hasta el 31 de diciembre de 2020, como Sargento de Armas, las cuales ascendían a $14,491.33 y que dicha cuantía no se le pagó conforme a la Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7001 *et seq.*, conocida como *Código Municipal de Puerto Rico*. Argumentó, además, que el derecho al pago de las licencias acumuladas hasta esa fecha ya era parte de su patrimonio, aun cuando el Municipio no liquidó los balances hasta ya pasado el 31 de diciembre de 2020. Así las cosas, Mercado Vázquez le solicitó a la CASP que le ordenara al Municipio a pagarle la suma de $16,488.85 por dicho concepto, más una suma en concepto de honorarios de abogado.[2]

El 10 de febrero de 2023, un Oficial Examinador de la CASP llevó a cabo una vista sobre el estado de los procedimientos, durante la cual las partes estipularon varios hechos. Así las cosas, el 9 de marzo de 2026, el Oficial Examinador rindió un informe, en el que recomendó declarar No Ha Lugar la apelación presentada por Mercado Vázquez.[3] Dicho informe se fundamentó en lo dispuesto en el Artículo 2.058(k) de la Ley Núm. 107-2020, 21 LPRA sec. 7247, el cual dispone que el pago global de las licencias acumuladas se realizará cuando ocurra la separación definitiva del servicio público.

[1] Véase, Entrada núm. 1 del apéndice del recurso de epígrafe en el SUMAC TA.
[2] Véase, Entrada núm. 1 del apéndice del recurso de epígrafe en el SUMAC TA.
[3] Véase, Entrada núm. 9 del apéndice del recurso de epígrafe en el SUMAC TA.

Asimismo, dispone que dicho pago se realizará a razón del sueldo que el funcionario o empleado devengue al momento de su separación del servicio.

De este modo, mediante *Resolución* emitida y notificada el 26 de marzo de 2026, la CASP acogió el Informe del Oficial Examinador y declaró *No Ha Lugar* la apelación presentada por el recurrido.[4] En consecuencia, le ordenó al Municipio pagarle al recurrido la suma de $10,076.00, en concepto del pago global de licencias acumuladas. En dicha *Resolución*, la CASP incorporó los siguientes hechos estipulados por las partes:

### HECHOS ESTIPULADOS POR LAS PARTES

1- El APELANTE trabajó en el municipio de San Germán hasta el 30 de septiembre de 2021.

2- El APELANTE fungió como Sargento de Armas de la Legislatura Municipal del municipio de San Germán desde el 1 de junio de 2004 hasta el 31 de enero de 2021.

3- Como Sargento de Armas de la Legislatura Municipal, el APELANTE, devengaba un salario mensual de $1,687.

4- El APELANTE fungió como Sargento de Armas bajo el servicio de confianza.

5- El APELANTE acumulaba licencia de vacaciones a razón de 2.5 horas al mes y licencia de enfermedad a 1.5 por mes.

6- Al momento de la terminación del contrato, como Sargento de Armas, el 31 de enero de 2021, el APELANTE tenía acumulado 60.21 días por licencia de vacaciones regulares y 91.05 días por licencia de enfermedad.

7- El APELANTE comenzó como empleado transitorio, en el Departamento de Programas Federales del municipio de San Germán, el 2 de febrero de 2021.

8- El salario mensual del APELANTE, en el Departamento de Programas Federales, era de $1,100 mensuales.

9- El APELANTE acumuló licencia de vacaciones a razón de 2.5 días por mes y licencia de enfermedad a 1.5 por mes en su nombramiento transitorio en el Departamento de Programas Federales del municipio de San Germán.

10- El contrato como empleado transitorio en el Departamento de Programas Federales culminó el 30 de septiembre de 2021.

11- Al momento de la terminación del contrato, como empleado transitorio, el 30 de septiembre de 2021, el

---

[4] Véase, Entrada núm. 9 del apéndice del recurso de epígrafe en el SUMAC TA.

APELANTE tenía acumulado 20 días por licencia de vacaciones regulares y 12 días por licencia de enfermedad.[5]

En desacuerdo, el 9 de abril de 2026, el Municipio presentó una *Moción en solicitud de reconsideración*.[6] En esta, alegó que, el 2 de diciembre de 2021, Mercado Vázquez le cursó al Municipio una carta, mediante la cual le devolvió el cheque por el monto de $10,076.00, entregado el 3 de noviembre de 2021 como pago por la liquidación de sus licencias acumuladas. De este modo, sostuvo que, a pesar de la certificación original provista, el Municipio se percató, en ese momento, que el recurrido había acumulado un exceso de 13.05 días en su licencia por enfermedad, al balance permitido por ley. En cuanto al balance de vacaciones, adujo que Mercado Vázquez acumuló un exceso de 20.21 días.

El Municipio razonó que el total de los balances que surge de la certificación del 7 de abril de 2026 es correcto y que este, al 14 de octubre de 2021, consistía en 80.21 días en la licencia regular de vacaciones y 103.05 días de licencia por enfermedad. No obstante, sostuvo que dichos balances no podían ser liquidados <u>en su totalidad</u>. En específico, la parte recurrente expuso que, conforme al Artículo 2.058(k), *supra*, el pago de vacaciones acumuladas no podía exceder de 60 días laborables, mientras que el de enfermedad se limitaba a 90 días laborables. En consecuencia, razonó que el exceso acumulado por el recurrido no podía ser objeto de compensación.

Como resultado de lo anterior, la parte recurrente anejó a su *Moción en solicitud de reconsideración* un documento preparado por la Oficina de Recursos Humanos del Municipio,[7] en el cual consignó la suma de $7,500.02, como el importe correcto a pagarle al recurrido, por concepto de liquidación de balances acumulados, conforme a lo dispuesto en el Artículo 2.058(k) de la Ley Núm. 107-

---

[5] Véase, Entrada núm. 9 del apéndice del recurso de epígrafe en el SUMAC TA.
[6] Véase, Entrada núm. 10 del apéndice del recurso de epígrafe en el SUMAC TA.
[7] Véase, Entrada núm. 12 del apéndice del recurso de epígrafe en el SUMAC TA.

2020, *supra.* En consecuencia, el Municipio le solicitó a la CASP que realizara una enmienda *nunc pro tunc* a la *Resolución* recurrida, en la que se había ordenado el pago de $10,076.00.

Por su parte, el 20 de mayo de 2026, el recurrido presentó una *Oposición a reconsideración.*[8] Mediante el referido escrito, expuso que el Municipio confundía la naturaleza y extensión de lo que constituye una enmienda *nunc pro tunc.* Asimismo, sostuvo que el Municipio procuraba inducir a error a la CASP. Ello, en la medida que formuló planteamientos nuevos, mediante los cuales replanteó la médula del caso y pretendió re litigarlo. De igual forma, Mercado Vázquez esbozó que los argumentos del Municipio resultaban improcedentes, por ser contrarios a las estipulaciones de hechos en el caso.

En particular, el recurrido añadió que el Municipio sostuvo, por primera vez y en etapa de reconsideración, que no procedía el pago de los $10,076.00 ordenados por la CASP, por ser dicha cuantía contraria al Artículo 2.058(k) de la Ley Núm. 107-2020, *supra.* Al respecto, añadió que una potencial reducción a $7,500.02, en el monto de la liquidación de los balances acumulados, no podía realizarse mediante una enmienda *nunc pro tunc.* Ello, toda vez que dicha modificación a la resolución sería sustancial y afectaría sus derechos.

Tras evaluar ambas posturas, la agencia recurrida emitió una *Resolución,* que fue notificada el 21 de abril de 2026. Mediante esta, declaró No Ha Lugar la solicitud de reconsideración del Municipio.[9]

Inconforme, el 20 de mayo de 2026, el Municipio acudió ante este Foro mediante el recurso de epígrafe, en el que señaló que la CASP cometió los errores siguientes:

---

[8] Véase, Entrada núm. 11 del apéndice del recurso de epígrafe en el SUMAC TA.
[9] Véase, Entrada núm. 13 del apéndice del recurso de epígrafe en el SUMAC TA.

Erró la Comisión Apelativa del Servicio Público al denegar la reconsideración presentada por el Municipio de San Germán y mantener una orden de pago por $10,076.00, a pesar de que dicha cuantía excede los máximos compensables dispuestos por el Artículo 2.058(k) del Código Municipal de Puerto Rico para el pago global de licencias acumuladas.

Erró la Comisión Apelativa del Servicio Público al no distinguir entre los balances de licencias acumuladas estipulados por las partes y los balances legalmente compensables bajo el Código Municipal, convirtiendo una estipulación fáctica en una autorización de pago no permitida por ley.

Erró la Comisión Apelativa del Servicio Público al tratar, implícitamente, la solicitud de corrección del cálculo como si constituyera una controversia nueva o una reapertura del caso, cuando la corrección solicitada se desprendía de las propias estipulaciones de hechos, del salario aceptado por la comisión y de la aplicación del derecho vigente.

Erró la Comisión Apelativa del Servicio Público al emitir y sostener una determinación internamente inconsistente: por un lado, concluyó que el Código Municipal aplica de forma clara al pago global de licencias; pero por otro lado mantuvo una cuantía que viola los límites expresos de ese mismo estatuto.

Tras una evaluación preliminar del recurso de epígrafe, el 21 de mayo de 2026, emitimos y notificamos una *Resolución*. Mediante esta, le concedimos a Mercado Vázquez el término dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63, para presentarnos su alegato.

Por su parte, en cumplimiento de nuestra orden, el 12 de junio de 2026, el recurrido presentó un escrito que tituló *Oposición a recurso de revisión administrativa*.[10] En esencia, replicó los argumentos previamente esbozados en el escrito de *Oposición a reconsideración*, presentado ante la CASP. En síntesis, arguyó que el Municipio pretende que reduzcamos la cuantía que debe liquidársele en concepto de licencias, de conformidad con evidencia reciente, que no se presentó oportunamente ante la CASP. Asimismo, adujo que el Municipio confunde la naturaleza y extensión de una enmienda *nunc pro tunc* y que nos induce a error mediante planteamientos nuevos que inciden sobre la médula del caso.

---

[10] Véase, Entrada Núm. 3 de SUMAC TA.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**I**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que cuentan con vasta experiencia y pericia para atender aquellos asuntos que la Asamblea Legislativa les ha delegado. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 116-117 (2022). Es por ello, que tales determinaciones gozan de una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *J.H.V. v. Negociado de la Policía de Puerto Rico*, res. 12 de diciembre de 2025, 2025 TSPR 139; *Transp. Sonnell, v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215-216 (2012).

No obstante, la norma antes reseñada tampoco es absoluta. Al respecto, el Tribunal Supremo ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *J.H.V. v. Negociado de la Policía de Puerto Rico*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial. Sobre el particular, detalló lo siguiente:

[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. [Cita omitida] Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 127 (2019); *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *OEG v. Martínez Giraud*, supra.

Bajo este supuesto, la sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675,[11] estableció "el marco rector aplicable a la revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. USAA Fed. Savs. Bank*, supra, pág. 484; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). De este modo, la intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos que la agencia realizó están sostenidas por la evidencia sustancial que obra en el expediente administrativo, visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, res. el 27 de marzo de 2025, 2025 TSPR 33,

---

[11] Conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*.

citando a *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012); *Rolón Martínez v. Supte. Policía,* supra, págs. 35-36.

Por otro lado, las conclusiones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la Ley Núm. 38-2017, *supra*; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán dar peso y deferencia a las interpretaciones que las agencias realicen respecto a aquellas leyes y reglamentos que administra. *Rolón Martínez v. Supte. Policía*, supra.

En fin, el Tribunal Supremo ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR,* supra, págs. 627-628; *OEG v. Martínez Giraud*, supra, pág. 90.

De este modo, el Alto Foro ha expresado que el criterio administrativo no podrá prevalecer en aquellas instancias en que la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, considera que "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud,* supra, pág. 91. Ello, pues, a fin de cuentas, "la interpretación de las leyes es una tarea inherentemente judicial". *J.H.V. v. Negociado de la Policía de Puerto Rico*, supra.

**B**

La Comisión Apelativa del Servicio Público (CASP) se creó en virtud del Plan de Reorganización Núm. 2-2010, según

enmendado,[12] 3A LPRA Ap. XIII, Art. 1. De este modo, la CASP fue creada con el propósito de promover una estructura gubernamental que responda a las necesidades reales de los puertorriqueños y que, a su vez, contribuya a generar una mejor calidad de vida para estos. Artículo 2, Plan de Reorganización Núm. 2-2010, 3A LPRA Ap. XIII, Art. 2. Se trata de "un organismo cuasi-judicial de la Rama Ejecutiva, que se especializa en asuntos obrero-patronales y del principio de mérito". *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1051 (2013). En fin, fue creada para atender casos laborales, de administración de recursos humanos y querellas de empleados públicos. *Íd.*

La CASP tiene jurisdicción apelativa exclusiva para evaluar las acciones o decisiones emitidas por la autoridad nominadora relacionadas a las áreas esenciales del mérito, acciones disciplinarias, beneficios marginales y la jornada de trabajo. Véase, *Colón Rivera v. ELA,* supra, pág. 1052.

En cuanto a su jurisdicción apelativa, el Artículo 12 del Plan de Reorganización Núm. 2-2010 dispone lo siguiente:

> La Comisión tendrá jurisdicción exclusiva sobre las apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:
>
> a) Cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por las secs. 1451 et seq. de este título, conocidas como "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de las secs. 1469 et seq. del Título 3, las secs. 7001 et seq. del Título 21, conocidas como "Código Municipal de Puerto Rico", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable.
>
> [...]

3A LPRA Ap. XIII, Art. 12.

---

[12] Conocido como el *Plan de Reorganización de la Comisión Apelativa del Servicio Público.*

**C**

La Ley Núm. 107-2020, según enmendada, 21 LPRA sec. 7001 *et seq.,* conocida como *Código Municipal de Puerto Rico,* derogó y sustituyó a su predecesora, la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 LPRA sec. 4001 *et seq.*, conocida como *Ley de Municipios Autónomos de Puerto Rico.* El propósito principal de la referida legislación es establecer el marco regulatorio que rija la organización, administración y funcionamiento de los gobiernos municipales.

De este modo, en la actualidad, la Ley Núm. 107-2020 es la fuente de derecho principal que regula la administración de los recursos humanos municipales, así como el pago global por licencias acumuladas. En lo pertinente, el Artículo 2.058(k) de la Ley Núm. 107-2020 dispone lo siguiente:

> (k) *Pago Global por Licencia Acumulada*
>
> Al renunciar a su puesto, o a la separación definitiva del servicio público por cualquier causa, **todo funcionario o empleado municipal tendrá derecho a percibir,** y se le pagará en un término no mayor de treinta (30) días, **una suma global de dinero por la licencia de vacaciones que tuviere acumulada a la fecha de su separación del servicio, hasta un máximo de sesenta (60) días laborables, o cualquier balance en exceso no disfrutado por necesidad del servicio** y que no haya sido pagado por el municipio y cualquier otro beneficio que disponga este Código.
>
> De igual forma, **a todo funcionario y empleado municipal se le pagará la licencia por enfermedad que tenga acumulada, hasta un máximo de noventa (90) días laborables**, a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno de Puerto Rico. Si no lo fuere a su separación definitiva del servicio, debe haber prestado, por lo menos, diez (10) años de servicio. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado estuviere devengando al momento de su separación del servicio, independientemente de los días que hubiere disfrutado de estas licencias durante el año.
>
> […]

21 LPRA sec. 7247(k). (Negrillas suplidas).

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Mediante el recurso que nos ocupa, el Municipio no cuestiona la determinación de la CASP de declarar No Ha Lugar la apelación presentada por el recurrido, en la que este solicitó que se le liquidaran las licencias por una suma mayor a la concedida, a base del salario devengado como Sargento de Armas. Es decir, mediante los cuatro señalamientos de error formulados, el Municipio plantea como controversia la presunta improcedencia de la cuantía que la CASP concedió al recurrido como pago global, en liquidación de sus balances. De este modo, es la contención del Municipio que el monto de $10,076.00 fue calculado a base de balances acumulados que exceden los máximos compensables bajo el Artículo 2.058(k) del la Ley Núm. 107-2020, *supra*. Tiene razón.

Por un lado, el Artículo 2.058(k), *supra*, es claro en cuanto al máximo de días por licencias que tiene derecho a percibir un empleado, por concepto de balances acumulados. Sin embargo, la controversia ante nos no requiere que sustituyamos el criterio de la CASP en su apreciación de la prueba, ni tampoco altera las estipulaciones de hechos. Es preciso destacar que las partes estipularon datos esenciales objetivos, tales como: fechas de servicio, salarios, naturaleza de los nombramientos y balances acumulados de licencias. Más bien, la controversia que hoy nos ocupa es estrictamente de derecho y se circunscribe a adjudicar si la CASP podía ordenar el pago de balances por licencias acumuladas que excedían los máximos compensables fijados en el Artículo 2.058(k) de la Ley Núm. 107-2020, *supra*.

En el caso de epígrafe, surge expresamente de la certificación del 7 de abril de 2026, provista por el Municipio que, al 14 de octubre de 2021, el recurrido tenía acumulado un total de 80.21 días en su licencia regular de vacaciones y otros 103.05 días, por concepto de licencia por enfermedad. Reiteramos que dicho cómputo

de días no se encuentra en controversia. Sin embargo, como cuestión de derecho, estos balances no podían ser liquidados en su totalidad, por disposición expresa del *Código Municipal de Puerto Rico.*

Como reseñáramos, el Artículo 2.058(k), *supra,* contiene tres aspectos relevantes. En primer lugar, el pago de las vacaciones acumuladas se limita a 60 días laborables, a menos que exista un balance en exceso que el funcionario o empleado no haya podido agotar por necesidad del servicio. Segundo, en cuanto al pago de la licencia por enfermedad, esta se limita a 90 días laborables, sin derecho a cobrar ningún balance en exceso. Tercero, la suma global por ambas licencias se pagará a razón del sueldo que el funcionario o empleado devengue al momento de la separación del servicio.

En el caso de la licencia de vacaciones, la CASP no fundamentó en ley la concesión de una liquidación de 80.21 días, tratándose de un balance que claramente excede el tope de 60 días contemplado en el *Código Municipal de Puerto Rico.* Tampoco identificó base legal alguna para justificar el pago de 103.05 días de licencia por enfermedad, en lugar del tope legal de 90 días máximos. En consideración a lo anterior, no se sostiene el pago de $10,076.00.

Nótese, que lo anterior no es contrario a los hechos estipulados. Sobre el particular, cabe resaltar que el Municipio reconoció que el recurrido, en efecto, tenía los balances acumulados que se consignaron en las estipulaciones y que fueron objeto de la certificación de 7 de abril de 2026. Sin embargo, como adelantáramos, dichos balances incontrovertidos no son legalmente pagaderos. Ello, pues una estipulación a los fines de consignar que una persona acumuló determinada cantidad de días no tiene el efecto de adjudicar su derecho a la liquidación del balance en cuestión, si este excede límites expresamente codificados en la legislación aplicable.

En cuanto a la solicitud de reconsideración instada por el Municipio ante la agencia recurrida, esta no constituyó un nuevo litigio. Por el contrario, constituyó una solicitud oportuna que posibilita la corrección de un remedio concedido, el cual resultó contrario a derecho.

En fin, concluimos que, por disposición expresa de la Ley Núm. 107-2020, la CASP se encuentra impedida de ordenar el pago de una liquidación de balances por licencias acumuladas, los cuales exceden los topes establecidos por el Artículo 2.058(k) del Código Municipal, *supra*. Al tratarse de una controversia de estricto derecho, no procede brindarle alguna deferencia a una interpretación administrativa que produce un remedio contrario al texto claro de la ley.

Basado en el presente análisis, procede revocar la *Resolución* recurrida, en la medida que la CASP le ordenó al Municipio pagarle a Mercado Vázquez la suma de $10,076.00, como liquidación correspondiente a un total de 183.26 días laborables. Ello, pues en el caso particular de la licencia por vacaciones, dicho monto incluye un exceso de 20.21 días laborables acumulados, el cual está sujeto a la posibilidad de no haber sido disfrutado, por motivo de necesidad del servicio.[13] Asimismo, de manera cónsona con el texto claro del Artículo 2.058(k) de la Ley Núm. 107-2020, *supra,* es un hecho incontrovertido que Mercado Vázquez no tiene derecho a que se le liquide el exceso de 13.05 días que acumuló en su licencia por enfermedad. Entiéndase que, contrario a la licencia por vacaciones, el exceso de 90 días acumulado en la licencia por enfermedad no está sujeto a la posibilidad de que proceda su liquidación, en caso de no haber sido disfrutado por motivo de necesidad del servicio.

---

[13] Véase, Artículo 2.058(k) de la Ley Núm. 107-2020, 21 LPRA sec. 7247(k), el cual dispone que, tras su separación del servicio, un funcionario o empleado tiene el derecho a que se le liquide su balance de vacaciones acumuladas "hasta un máximo de sesenta (60) días laborables, **o cualquier balance en exceso no disfrutado por necesidad del servicio**". (Negrillas suplidas).

En virtud de lo anterior, corresponde devolver el caso ante la consideración de la CASP. Ello, a los únicos fines de que el recurrido cuente con la oportunidad de probar si procede el pago de los 20.21 días que acumuló en su licencia por vacaciones, en exceso de 60.

**IV**

Por los fundamentos que anteceden, revocamos la *Resolución* recurrida. En consecuencia, se devuelve el caso ante la consideración de la Comisión Apelativa del Servicio Público, para la continuación de los procedimientos, de forma cónsona con lo dispuesto en esta *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones